# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHANTON LEWIN BLACKSHIRE,

        Defendant-Appellant.

UNPUBLISHED
December 9, 2014

No. 317594
Wayne Circuit Court
LC No. 12-003666-FC

Before: JANSEN, P.J., and TALBOT and SERVITTO, JJ.

PER CURIAM.

Chanton Lewin Blackshire appeals as of right his jury trial conviction of unlawfully driving away an automobile (UDAA).[1] Blackshire was sentenced, as a fourth habitual offender,[2] to 46 months' to 10 years' imprisonment, with 490 days' jail credit. We affirm.

## I. BLACKSHIRE'S BRIEF ON APPEAL

Blackshire contends that there was insufficient evidence to support his UDAA conviction. We disagree.

"We review de novo a challenge on appeal to the sufficiency of the evidence."[3] Due process requires sufficient evidence to sustain a conviction.[4] "In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt."[5]

---

[1] MCL 750.413. Blackshire was originally charged with carjacking, MCL 750.529a(1), but was only convicted of the lesser offense of UDAA by the jury.

[2] MCL 769.12.

[3] *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

[4] *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999) (citation omitted).

[5] *People v Kosik*, 303 Mich App 146, 150; 841 NW2d 906 (2013).

MCL 750.413 provides, in pertinent part:

> Any person who shall, wilfully and without authority, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a felony . . . .

Thus, the essential elements of UDAA are: "(1) possession of a vehicle, (2) driving the vehicle away, (3) that the act is done wilfully, and (4) the possession and driving away must be done without authority or permission."[6] Further, "it is well settled that identity is an element of every offense."[7] Identity can be established by either direct or circumstantial evidence.[8] "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew. Moreover, this Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime."[9]

Blackshire only challenges the element of identity. Blackshire merely argues that the victim's testimony was not credible given her inconsistent statements and her emotional state during the theft of her van, and that the victim's memory of Blackshire as the perpetrator was formed during the police officers' suggestive identification processes.[10] Essentially, Blackshire does not claim that the prosecution failed to set forth evidence identifying him as the perpetrator of the offense; he merely argues that the victim was not credible and her identification of him should not be accepted by this Court. We may not, however, interfere with the jury's role of determining the credibility of identification testimony.[11] Blackshire and his daughter both testified that it was a man named Winston, not Blackshire, who drove off with the victim's van. Though this testimony contradicted the victim's unequivocal testimony that she saw Blackshire drive away in her car, this Court will not disturb a jury's determination of the credibility of witnesses.[12] Also, this positive identification by a witness is sufficient to support the conviction.[13] Therefore, the prosecution proffered sufficient testimony identifying Blackshire as the perpetrator of the UDAA.

## II.  BLACKSHIRE'S STANDARD 4 BRIEF ON APPEAL

---

[6] *People v Hendricks*, 200 Mich App 68, 71; 503 NW2d 689 (1993), aff'd 446 Mich 435 (1994).

[7] *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

[8] *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967).

[9] *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000) (citations omitted).

[10] The issue of the victim's identification of Blackshire will be addressed *infra*, Section II.E.

[11] *Davis*, 241 Mich App at 700.

[12] *Kosik*, 303 Mich App at 150.

[13] *Davis*, 241 Mich App at 700.

In a brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, Blackshire alleges several additional errors.

## A.  SIGNING OF THE FELONY COMPLAINT

Blackshire first contends that his due process rights were violated because the trial court never had jurisdiction over him, due to defects in his felony complaint.  We disagree.

"Issues of statutory interpretation are reviewed de novo on appeal."[14]  Also, "[i]nterpretation of a court rule is a question of law that this Court reviews de novo."[15]  In interpreting a court rule, this Court applies "the same rules as when [it] engage[s] in statutory interpretation."[16]

"The primary function of a complaint is to move the magistrate to determine whether a warrant shall issue."[17]  "The complaint must include the substance of the accusation against the accused and the name and statutory citation of the offense."[18]  It "must be signed and sworn to before a judicial officer or court clerk."[19]  In addition, "[a] complaint may not be filed without a prosecutor's written approval endorsed on the complaint or attached to it . . . ."[20]  Under MCR 6.104(D), if an accused is arrested without a warrant, the prosecutor must file the complaint "at or before the time of arraignment."  "On receiving the complaint and on finding probable cause, the court must either issue a warrant or endorse the complaint . . . ."[21]

Blackshire's claim that the felony complaint was never signed and sworn to is without merit.  Blackshire was arrested on March 27, 2012, shortly after the victim called the police to report the theft of her van.  He was arraigned before the district court on March 30, 2012.  Contrary to Blackshire's assertion, the felony complaint in Blackshire's file was signed by the

---

[14] *People v Morales*, 240 Mich App 571, 575; 618 NW2d 10 (2000).

[15] *People v Buie*, 285 Mich App 401, 416; 775 NW2d 817 (2009) (citation and quotation marks omitted).

[16] *Id.* (citation and quotation marks omitted).

[17] *People v Higuera*, 244 Mich App 429, 443; 625 NW2d 444 (2001) (citation and quotation marks omitted); see also MCR 6.102(A) ("A court must issue an arrest warrant . . . if presented with a proper complaint and if the court finds probable cause to believe that the accused committed the alleged offense.").

[18] MCR 6.101(A).

[19] MCR 6.101(B).

[20] MCR 6.101(C); see also MCL 764.1(1) (stating that a magistrate shall not issue an arrest warrant unless "the authorization is signed by the prosecuting attorney").

[21] MCR 6.104(D); see also MCL 764.1c(1)(b) (providing that if a defendant is in custody after a warrantless arrest, a judge, upon finding reasonable cause, can endorse the complaint).

district court judge, the complaining detective, and the prosecutor, and indicates that it was sworn to before the judge, on that same day.

Blackshire additionally claims that the felony complaint was defective because it was stated in conclusory terms, did not provide the underlying facts, and did not indicate that it was based on personal knowledge. The felony complaint contained the following allegations:

**COUNT 1:** CARJACKING

[Blackshire] did in the course of committing a larceny of [a] 1987 GMC SAFARI VAN, a motor vehicle, use force or violence against, or use the threat of force or violence against, or put in fear [the victim], a person in lawful possession of the motor vehicle; contrary to MCL 750.529a.

Therefore, the felony complaint satisfied the statutory requirement that it "include the substance of the accusation against the accused and the name and statutory citation of the offense."[22] Further, a complaint need not contain a detailed factual account of the offenses[23] and may be based on "information and belief."[24] Blackshire has not proffered, and the lower court file is vacant of, any procedural defects related to his felony complaint. Further, this Court has held that a conclusory complaint "does not oust jurisdiction."[25] Thus, Blackshire's argument lacks merit.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Blackshire next contends that his trial counsel was ineffective on the basis of numerous omissions and failures. Finding no errors requiring reversal, we disagree.

A claim of ineffective assistance of counsel is preserved by a motion for a new trial or a *Ginther*[26] hearing.[27] Blackshire never requested a new trial or a *Ginther* hearing below. Therefore, this issue is unpreserved for appeal.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law."[28] Generally, the trial court's findings of fact are reviewed for clear

---

[22] MCR 6.101(A).

[23] MCL 764.1d.

[24] MCL 764.1a(3).

[25] *People v Mayberry*, 52 Mich App 450, 450-451; 217 NW 2d 420 (1974). For these reasons, Blackshire's claims of ineffective assistance of counsel relating to this issue also fail.

[26] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[27] *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

[28] *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

error and the questions of constitutional law are reviewed de novo.[29] Unpreserved claims of ineffective assistance of counsel can still be reviewed; however, this "review is limited to errors apparent on the record."[30]

In order to establish a claim of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; (2) there is a reasonable probability that, but for counsel's errors, the result of the proceedings would be different; and (3) the result that did occur was fundamentally unfair or unreliable.[31] "Effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise."[32] This Court will not substitute its judgment for that of trial counsel on matters of strategy, nor will it employ the benefit of hindsight to assess the competence of counsel.[33]

Blackshire first bases his claim of ineffective assistance on trial counsel's failure to visit him in jail to discuss his case or to investigate the case properly. Limiting our review to the record, however, there is no evidence to support Blackshire's claim that trial counsel failed to investigate the case or meet with him. As the trial court noted early on the second day of trial, Blackshire had consistently complained that each of the three attorneys that he had been assigned throughout the lengthy pretrial process was not visiting with him in jail, despite evidence that they had gone to discuss the case with him. Further, as the trial court pointed out, trial counsel sought an investigator and subpoenaed witnesses related to the case. Therefore, there is no evidence on the record to support Blackshire's claims that trial counsel was ineffective for failing to meet with him or properly investigate the case.

Blackshire next claims that trial counsel was ineffective for failing to call the witnesses he requested, ask the witnesses the questions he wanted asked, and present cell phone records that were in his possession. Whether to call or question witnesses,[34] and what evidence to present,[35] are presumed to be matters of trial strategy. This Court will not second-guess such strategy with the benefit of hindsight.[36] Furthermore, the failure to call witnesses or present evidence can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense.[37]

---

[29] *Id.*

[30] *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

[31] *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

[32] *Id.*

[33] *Payne*, 285 Mich App at 190 (citation omitted).

[34] *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

[35] *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013).

[36] *Id.*

[37] *Id.*; *Payne*, 285 Mich App at 190 (citation omitted).

Blackshire claims that his trial counsel failed to contact an unnamed witness that would have allegedly testified that Winston was the driver of the van and that Winston had a relationship with the victim. The record, however, does not support the existence of the unnamed witness or what the testimony of the unnamed witness would have been. Blackshire also claims that his trial counsel failed to call Detective Michael Maurier, who made numerous false statements and was in possession of a video tape that showed a person getting in the allegedly stolen vehicle who was taller than Blackshire. Detective Maurier did, however, testify at trial and there is no evidence in the record of the alleged video tape. Blackshire also fails to point out the alleged false statements made by Detective Maurier. Blackshire further claims that his trial counsel failed to impeach the victim and another witness at trial. Based on the record, Blackshire, however, fails to overcome the presumption that trial counsel's conduct was sound trial strategy[38] and has not shown that he was deprived of a substantial defense.[39] Trial counsel called both Blackshire's daughter and Blackshire to testify to his version of events on the day in question. Blackshire was able to testify that he never stole, or even drove, the victim's car, despite the testimony to the contrary. Finally, Blackshire argues that trial counsel failed to obtain cell phone records showing that Winston called the victim. The record does not support the existence of any cell phone records that would have "proved this whole case was a lie." Thus, Blackshire's claims fail.

Blackshire next argues that trial counsel was ineffective for failing to "file valid motions" that he needed. Blackshire, however, gives no indication which, if any, motions he asked trial counsel to file. Without any indication what motions Blackshire would have liked trial counsel to file, Blackshire has not overcome the strong presumption of trial counsel's effectiveness.[40]

Blackshire also claims that trial counsel was ineffective for failing to argue the issue of his unsigned and unsworn felony complaint. As discussed above, Blackshire's felony complaint was properly signed on the day of his arraignment, and there was no procedural violation. Trial counsel was not required to advocate a meritless position.[41] Therefore, trial counsel was not ineffective on this basis.

Next, Blackshire contends that trial counsel was ineffective for failing to object to the trial court instructing the jury on the uncharged offense of UDAA, depriving him of his due process right to notice. In closing argument, trial counsel suggested to the jury that Blackshire was, at most, guilty of UDAA, not carjacking. The trial court then, upon request by the prosecutor, decided to instruct the jury on the offense of UDAA. Trial counsel did not object and, as discussed below, waived the issue. This Court has stated that it "will not second-guess counsel's trial tactic of admitting guilt of a lesser offense."[42] Further, declining to raise

---

[38] *Dunigan*, 299 Mich App at 589-590; *Russell*, 297 Mich App at 716.

[39] *Dunigan*, 299 Mich App at 589; *Payne*, 285 Mich App at 190 (citation omitted).

[40] *Lockett*, 295 Mich App at 187.

[41] *Ericksen*, 288 Mich App at 201.

[42] *People v Emerson (After Remand)*, 203 Mich App 345, 349; 512 NW2d 3 (1994).

objections can be sound trial strategy.[43]  Here, the prosecution provided substantial evidence, in the form of the victim's testimony, that she saw Blackshire drive off in her car and threaten her with a screwdriver.  It was reasonable trial strategy for trial counsel to assume that the jury was unlikely to completely acquit Blackshire, and, therefore, allow instructions on a lesser offense, which could lessen Blackshire's conviction and sentence.  Therefore, Blackshire fails to overcome the presumption that counsel's assistance was effective.[44]  Moreover, Blackshire fails to establish that the result was fundamentally unfair.[45]  The felony information gave Blackshire sufficient notice of the need to defend against UDAA and Blackshire fails to argue how any lack of notice prejudiced his defense.[46]

Finally, Blackshire argues that his trial counsel failed to object when the victim testified at trial that she identified Blackshire next to a white van.  Blackshire claims that he was never next to the van.  The record does not support Blackshire's assertion that he was never identified. At trial, Blackshire's testimony suggested that he was identified while standing next to the police car.  Even if the victim's testimony was inconsistent with Blackshire's version of events, Blackshire fails to overcome the presumption that trial counsel's failure to object was sound trial strategy.[47]

## C.  NOTICE OF CHARGES/JURY INSTRUCTIONS

Blackshire contends that his due process rights were violated when the trial court instructed the jury on UDAA, despite never having been arraigned on that charge or otherwise having any notice of it, and where the instruction on UDAA was inaccurate.  We disagree.

"A party must object or request a given jury instruction to preserve the error for review. Absent an objection or request for an instruction, this Court will grant relief only when necessary to avoid manifest injustice."[48]  Where counsel expresses satisfaction with the jury instructions, however, any claim of error is deemed waived, leaving nothing for this Court's review.[49] Blackshire never objected to the trial court's decision to instruct the jury on UDAA, as well as

---

[43] *People v Unger*, 278 Mich App 210, 242, 253; 749 NW2d 272 (2008).

[44] *Lockett*, 295 Mich App at 187.

[45] *Id.*

[46] See *People v Darden*, 230 Mich App 597, 601-602; 585 NW2d 27 (1998).  See also *People v Apgar*, 264 Mich App 321, 327; 690 NW2d 312 (2004) ("Although defendant was convicted of an uncharged crime, we conclude that defendant was not deprived of due process because all the elements of the uncharged crime were proved at the preliminary examination and trial without objection, providing defendant adequate notice.").

[47] *Unger*, 278 Mich App at 242.

[48] *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000) (citations omitted).

[49] *People v Carter*, 462 Mich 206, 219; 612 NW2d 144 (2000).

carjacking. Further, defense counsel expressed satisfaction with the jury instructions at their conclusion, waiving appellate review of this issue. The trial court explicitly asked the parties if they were "satisfied with the instructions," to which defense counsel replied, "Yes, your Honor." Defense counsel's explicit expression of satisfaction waived any error in the jury instructions.[50] Further, the trial court only decided to include instructions on UDAA because of defense counsel's closing arguments indicating that, at most, the prosecution had offered evidence to support UDAA. "[A] party may not harbor error at trial and then use that error as an appellate parachute . . . ."[51] Therefore, defendant has waived this issue, and cannot obtain appellate review.[52]

## D. NOTICE OF HABITUAL SENTENCING

Blackshire next contends that his sentence as a fourth habitual offender was invalid because of the prosecution's failure to have the felony complaint signed and sworn to and the reliance on invalid prior convictions. We disagree.

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court."[53] Because Blackshire failed to argue below that he had never received notice of his sentencing enhancement or challenge the validity of the prior convictions listed in the habitual-offender notice, this issue is unpreserved for appeal and our review is for plain error affecting substantial rights.[54]

A prosecuting attorney can seek a sentencing enhancement under the habitual-offender statutes by filing written notice within 21 days after arraignment or, if arraignment is waived, within 21 days after the information is filed.[55] The lower court record contains both a felony complaint and a felony information, which include fourth-offense habitual offender notices, both dated March 30, 2012. Blackshire's arraignment also occurred on March 30, 2012. Therefore, the notice was properly and timely filed.[56]

With regard to the validity of the prior convictions, a defendant "may challenge the accuracy or constitutional validity of 1 or more of the prior convictions listed in the notice by

---

[50] *Id.*

[51] *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010).

[52] *People v Hall (On Remand)*, 256 Mich App 674, 679; 671 NW2d 545 (2003).

[53] *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007).

[54] *People v Marshall*, 298 Mich App 607, 625-626; 830 NW2d 414 (2012), vacated in part on other grounds 493 Mich 1020 (2013).

[55] MCL 769.13(1).

[56] It is unclear what Blackshire is referring to by his statement that he "never received an acknowledgment of receipt." He, however, fails to argue that he was not served with the notice, as required under MCL 769.13(2).

filing a written motion with the court and by serving a copy of the motion upon the prosecuting attorney."[57] The existence of a defendant's prior convictions is determined by the court based on any evidence that is relevant for that purpose, including information contained in the presentence report.[58] Blackshire never challenged the accuracy or validity of his prior convictions in a motion. Moreover, Blackshire does not dispute that the two prior convictions that he claims were invalid were supported by information in the presentence report.[59] Rather, Blackshire claims that the information in the presentence report was incorrect and that his trial counsel failed to raise numerous errors in the presentence report. Based on the record before us, however, there is no evidence, other than Blackshire's assertions, that the prior convictions were improper or invalid. Thus, Blackshire has failed to establish plain error affecting his substantial rights.[60]

## E. IDENTIFICATION EVIDENCE

Blackshire next contends that his due process rights were violated by the trial court's admission of his improper and highly suggestive identification. We disagree.

"On review, the trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous. Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made."[61]

A defendant is generally entitled to have counsel present during an identification procedure.[62] Counsel is not required, however, at an on-the-scene corporeal identification conducted before the initiation of adversarial judicial proceedings.[63] "[P]rompt, on-the-scene identifications are reasonable, 'indeed indispensable, police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime, and subject to arrest, or merely an unfortunate victim of circumstance.' "[64]

---

[57] MCL 769.13(4).

[58] MCL 769.13(5)(d).

[59] We note that the complete presentence report was not provided on appeal. Additionally, in a motion to preclude cross-examination regarding his prior convictions, Blackshire admitted that he had three prior convictions.

[60] See *Marshall*, 298 Mich App at 625-626.

[61] *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993) (opinion by GRIFFIN, J.) (citations omitted); *id*. at 318 (BOYLE, J., concurring in part and dissenting in part).

[62] *People v Winters*, 225 Mich App 718, 723; 571 NW2d 764 (1997).

[63] *People v Hickman*, 470 Mich 602, 611; 684 NW2d 267 (2004); *Winters*, 225 Mich App at 727.

[64] *People v Libbett*, 251 Mich App 353, 359; 650 NW2d 407 (2002), quoting *Winters*, 225 Mich App at 728.

"A lineup can be so suggestive and conducive to irreparable misidentification that it denies an accused due process of law."[65] "In order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification."[66] The remedy for an impermissibly suggestive pretrial procedure is the exclusion of testimony concerning that identification at trial.[67] "However, in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure."[68]

Here, the victim was brought by police officers to the scene of Blackshire's arrest shortly after she was originally accosted by Blackshire, in order to attempt to identify him as the man she saw take her car. While still in the police car, and approximately 100 feet away from Blackshire, his girlfriend, and their children, the victim stated, "those are the people that were in my car," and identified Blackshire as the person who took her car. According to the victim, once on the scene of Blackshire's arrest, she was told to identify the man who stole her van, if he was present. The victim saw Blackshire standing next to a white taxi van with a woman and three kids, and she identified Blackshire as the man who stole her van. The victim further noted that Blackshire had changed his shirt between when she first saw him stealing her van and when she identified him with the officers, but the victim told the officers about the shirt and still had no doubt in her mind that Blackshire was the man she saw stealing her van. Again, no counsel is required at an on-the-scene corporeal identification conducted before the initiation of adversarial judicial proceedings,[69] and there is nothing in the record to show that this particular identification was unduly suggestive.[70]

Blackshire essentially argues that the victim was lying or not credible when she testified that she identified Blackshire while he was standing in front of the taxi van because he was already placed in a police car before the victim arrived on scene. There is no support in the record below for Blackshire's assertion, however, and this Court will not resolve the credibility of identification testimony on appeal.[71]

---

[65] *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002).

[66] *Kurylczyk*, 443 Mich at 302 (opinion by GRIFFIN, J.); *id*. at 318 (BOYLE, J., concurring in part and dissenting in part).

[67] *Kurylczyk*, 443 Mich at 303 (opinion by GRIFFIN, J.); *id*. at 318 (BOYLE, J., concurring in part and dissenting in part).

[68] *Kurylczyk*, 443 Mich at 303 (opinion by GRIFFIN, J.); *id*. at 318 (BOYLE, J., concurring in part and dissenting in part).

[69] *Hickman*, 470 Mich at 611.

[70] See *Libbett*, 251 Mich App at 363.

[71] *Davis*, 241 Mich App at 700. For these reasons, Blackshire's suggestion that trial counsel was ineffective in failing to address this issue also fails.

F. PROSECUTORIAL MISCONDUCT

Finally, Blackshire contends that his due process and equal protection rights were violated by numerous instances of prosecutorial misconduct. Again, we disagree.

A claim of prosecutorial misconduct generally must be preserved with a contemporaneous objection and a request for a curative instruction at trial.[72] Blackshire never objected to the prosecutor's conduct, except with regard to the felony complaint, nor did he request any curative instructions at trial. Therefore, this issue is unpreserved for appeal.

"Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial. Further, allegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context."[73] We review unpreserved issues of prosecutorial misconduct "for plain error affect substantial rights."[74] "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect."[75]

Blackshire first contends that the prosecutor committed misconduct by "continu[ing] a case where they had no jurisdiction legally to do so," because his felony complaint was never signed and sworn to. Again, Blackshire's felony complaint was properly signed at his arraignment, and there was no procedural violation in that regard. Therefore, it cannot be said that the prosecutor committed misconduct in continuing Blackshire's prosecution.

Blackshire next contends that the prosecutor committed misconduct by failing to disclose exculpatory evidence, i.e., a videotape that showed a man "a lot taller than" Blackshire getting into the victim's van. The prosecution's failure to disclose exculpatory or material evidence in its possession constitutes a due process violation regardless of whether the defendant requested the evidence.[76] The elements of a *Brady* violation are: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material."[77]

Despite Blackshire's appellate claim that the prosecution failed to disclose a videotape that showed a different man getting into the victim's car, a review of the lower court record shows no mention by either party of this videotape's existence. Blackshire has not offered any

---

[72] *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010).

[73] *Id*. (citations omitted).

[74] *Id*.

[75] *Id*. at 475-476 (citations and quotation marks omitted; alteration in original).

[76] *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541 (2011).

[77] *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014).

proof beyond mere speculation that the videotape exists, let alone that the prosecution concealed or destroyed the videotape. Thus, Blackshire has not shown either a *Brady* violation or prosecutorial misconduct.

Third, Blackshire argues that the prosecutor committed misconduct by impeaching him with an inadmissible, illegally seized, and unauthenticated letter. Before trial, Blackshire mailed two letters from jail to the victim, one dated April 13, 2012, and the second dated May 15, 2012. The letters were intercepted by one of the victim's coworkers, who then opened one of the letters and turned both over to the police. Once the letters were turned over to the police, an officer opened the second letter and then obtained a warrant to arrest Blackshire for witness tampering. On August 30, 2012, one of Blackshire's previous attorneys filed a motion to suppress the letters based on Blackshire's Fourth Amendment rights. On March 27, 2013, the parties appeared before the trial court for a pretrial hearing and to argue Blackshire's motion. At the hearing, Blackshire's trial counsel argued that the police officer had no right to open the second letter without a search warrant. The trial court found that the police officer violated Blackshire's Fourth Amendment rights when he opened the second letter, but because the first letter had been opened by "a private citizen," it did not need to be suppressed. Therefore, the trial judge allowed the use of the first letter at trial, but barred admission or mention of the second letter. At trial, the prosecution cross-examined Blackshire regarding the letter he sent to the victim on April 13, 2012. "This is essentially an evidentiary issue framed as prosecutorial misconduct. A prosecutor's good-faith effort to admit evidence does not constitute misconduct."[78] The prosecutor was acting in good faith, pursuant to the trial court's order allowing the admission of the April 13, 2012 letter. Therefore, his actions do not constitute misconduct.

Blackshire also argues that the prosecutor committed misconduct by allowing, and not correcting, perjured witness testimony. A prosecutor may not knowingly use false testimony to obtain a conviction.[79]

> A defendant's right to due process guaranteed by the Fourteenth Amendment is violated when there is any reasonable likelihood that a conviction was obtained by the knowing use of perjured testimony. Accordingly, a prosecutor has an obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility. When a conviction is obtained through the knowing use of perjured testimony, a new trial is required only if the tainted evidence is material to the defendant's guilt or punishment. So whether a new trial is warranted depends on the effect the misconduct had on the trial. The entire focus of the analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability.[80]

---

[78] *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

[79] *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009).

[80] *People v Gratsch*, 299 Mich App 604, 619-620; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013) (internal citations, quotation marks, and alteration omitted).

Blackshire contends that the prosecutor allowed the victim to testify at trial to a story that was "totally different from what she [said] happened at the pre-liminary [sic] exam." Other than Blackshire's blanket assertions, there was no evidence that the prosecutor knowingly admitted false testimony. Defense counsel cross-examined the victim and had the opportunity to question her regarding any inconsistencies in her testimony, which would have presented an issue of weight, not admissibility, for the jury to resolve.[81]

Finally, Blackshire contends that the prosecutor committed misconduct by making numerous improper arguments to the jury. "Prosecutorial comments must be read as a whole and evaluated in the light of defense arguments and the relationship they bear to the evidence admitted at trial."[82] Blackshire first alleges that the prosecutor improperly and repeatedly asserted that Blackshire was guilty. Prosecutors are free to argue the evidence and all reasonable inferences arising from it as they relate to their theory of the case, but may not express their personal opinion regarding a defendant's guilt.[83] "Such comments during closing argument will be reviewed in context to determine whether they constitute error requiring reversal."[84] Despite Blackshire's contention, the prosecutor actually stated at the end of his closing argument, "I ask you, remember Mr. Blackshire is innocent until proven guilty." The only time the prosecutor mentioned Blackshire's guilt was at the conclusion of his rebuttal argument. The prosecutor's single statement alleging Blackshire's guilt was a reasonable inference arising from the evidence he mentioned, and does not require reversal, particularly in light of the trial court's instruction that the lawyers' statements and arguments are not evidence.[85]

Blackshire next contends that the prosecutor improperly vouched for the victim's credibility, but does not point to any specific statements. "A prosecutor may not vouch for the credibility of his witnesses by suggesting that he has some special knowledge of the witnesses' truthfulness."[86] However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes."[87] Further, "the prosecutor may argue from the facts that a witness should be believed."[88] In this case, the prosecution and Blackshire each provided starkly different stories regarding the events on the day in question.

---

[81] *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005).

[82] *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008).

[83] *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995) (citation omitted).

[84] *Id*. at 283.

[85] *Unger*, 278 Mich App at 237.

[86] *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

[87] *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004).

[88] *Seals*, 285 Mich App at 22 (citation and quotation marks omitted).

Because Blackshire's guilt depended upon which evidence the jury believed, the prosecutor was permitted to comment on the victim's credibility in closing.[89]

Blackshire finally contends that the prosecutor improperly "[e]xpressed to the jury how many years [he has] been a successful prosecutor." It is true that a prosecutor may not use "the prestige of the prosecutor's office to inject personal opinion."[90] While the prosecutor did mention during his opening statement that he had been a prosecutor for 33 years, he did not use the prestige of his office to in any way inject his personal opinion regarding the case. Reading the prosecutor's comments as a whole,[91] his statements did not rise to the level of prosecutorial misconduct.

Affirmed.

/s/ Kathleen Jansen
/s/ Michael J. Talbot
/s/ Deborah A. Servitto

---

[89] *Thomas*, 260 Mich App at 455.

[90] *Bahoda*, 448 Mich at 286.

[91] *Brown*, 279 Mich App at 135.