PEOPLE v WINTERS

Docket No. 184935. Submitted March 4, 1997, at Detroit. Decided October 14, 1997, at 9:05 A.M. Leave to appeal sought.

Andre C. Winters was convicted by a jury in the Oakland Circuit Court, Steven N. Andrews, J., of assault with intent to commit murder, possession of a short-barreled shotgun, and possession of a firearm during the commission of a felony. He was sentenced to concurrent terms of twenty-five to fifty years' imprisonment for the assault conviction and three to five years' imprisonment for the short-barreled shotgun conviction, to be served consecutively to a two-year term for the felony-firearm conviction. The defendant appealed.

The Court of Appeals *held*:

1. The defendant's right to counsel established in *People v Anderson*, 389 Mich 155 (1973), which provides that, before and after commencement of the judicial phase of a prosecution, a suspect is entitled to be represented by counsel at a corporeal identification, was not violated as a result of the victim's on-the-scene corporeal identification of the defendant that was conducted without the benefit of counsel for the defendant. It is proper and does not offend the *Anderson* requirements for the police promptly to conduct an on-the-scene corporeal identification.

2. Issues concerning the alleged undue suggestiveness of the on-the-scene identification and whether the verdict was against the great weight of the evidence were not preserved for appellate review.

3. The defendant's allegation that the court misinterpreted the instructions regarding the application of prior offense variables in the sentencing guidelines does not state a cognizable claim for relief.

4. The defendant did not object at sentencing to an alleged inaccuracy of the sentencing information report and thus did not preserve the issue for appeal.

Affirmed.

1. CRIMINAL LAW — RIGHT TO COUNSEL — ON-THE-SCENE CORPOREAL IDENTIFICATIONS.

The right to counsel established in *People v Anderson*, 389 Mich 155 (1973), which provides that, before and after commencement of the judicial phase of a prosecution, a suspect is entitled to be represented by counsel at a corporeal identification, is not violated where the police promptly conduct an on-the-scene corporeal identification of the suspect without the benefit of counsel for the suspect; such on-the-scene confrontations are reasonable police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance.

2. SENTENCING — SENTENCING GUIDELINES — APPEAL.

There is no juridical basis for claims of error based on alleged misinterpretation of the sentencing guidelines, instructions regarding how the guidelines should be applied, or misapplication of guideline variables because the guidelines do not have the force of law.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Richard Thompson*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Janice A. Kabodian*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Desiree M. Ferguson*), for the defendant on appeal.

Before: DOCTOROFF, P.J., and YOUNG and MICHAEL J. KELLY, JJ.

YOUNG, J. Following a jury trial, defendant was convicted of assault with intent to commit murder, MCL 750.83; MSA 28.278, possession of a short-barreled shotgun, MCL 750.224b; MSA 28.421(2), and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to concurrent prison terms of twenty-five to fifty years for the assault with intent to commit murder conviction and three to five years for the possession of a short-barreled shotgun conviction, to be

served consecutively to a two-year term for the felony-firearm conviction. Defendant appeals his convictions and sentences as of right. We affirm.

On January 9, 1994, at about 11:10 P.M., the victim drove into the parking lot of a White Castle restaurant on Woodward Avenue in Ferndale. As he parked, the victim saw three men, who were standing in the parking lot near the drive-through lane, approach his car. One man stood next to the driver's side of the victim's car, one stood on the passenger side, and one stood in front of the restaurant door facing the car. The man standing next to the passenger's side of the car, later identified as defendant, was wearing a red bandana on his head, a long red-and-black plaid hunter's jacket, and a shorter black leather jacket over that. The man standing next to the driver's side of the car tapped on the window. The victim rolled down the window about an inch, and the man asked him for the time. The victim told the man the time and rolled the window up again.

At that point, the victim noticed movement near the passenger's side of the car. The victim saw defendant pull a shotgun from under his jacket and fire. The victim was struck in the right arm. Some of the shotgun pellets also struck the victim in the chest and chin. The victim managed to pull out of the parking lot and drive away. He eventually stopped the car, got out, and collapsed at the doorway of a Subway sandwich shop about a quarter mile from the scene of the shooting. The victim was bleeding severely and asked repeatedly whether his right arm was still attached. When the police arrived, the victim told them he had been shot. He gave the police a description of his assailants, stating that one man was wearing a New

York Giants baseball cap and that another one had a Chicago Bulls baseball cap. The victim specifically described the shooter as a white male wearing a bandana and a red-and-black plaid jacket.

Officer Michael Lennon testified that he proceeded to the White Castle restaurant, where he spotted three men matching the descriptions given by the victim standing at a telephone booth. Two of the men, Chuck Vigil and defendant, ran upon seeing the officer. The third, David Boswell, told Officer Lennon that the other two men had just robbed him and taken his coat. However, when Officer Lennon and Boswell drove to where defendant and Vigil had been apprehended by other officers, Boswell denied that they were the men who robbed him. All three men were taken into custody and driven to the Subway restaurant. Defendant was wearing a red bandana and a red-and-black plaid jacket. As the victim was being placed in the ambulance, he stated that the three suspects were the ones who shot him. The victim specifically identified defendant as the shooter. The police eventually found a shotgun, which recently had been fired, buried in a mound of snow approximately thirty feet from the telephone booth in the White Castle parking lot.

I

Defendant first argues that the victim's on-the-scene identification was improper because it was taken in violation of defendant's "constitutional" right to counsel. We disagree.

We note initially that this issue does not involve defendant's Sixth Amendment right to counsel. US Const, Am VI. In *Moore v Illinois*, 434 US 220, 226-

227; 98 S Ct 458; 54 L Ed 2d 424 (1977), the United States Supreme Court adopted the plurality opinion in *Kirby v Illinois*, 406 US 682; 92 S Ct 1877; 32 L Ed 2d 411 (1972), which stated that the right to counsel announced in *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), only attaches to corporeal identifications conducted "at or after the initiation of adversary judicial criminal proceedings . . . ." *Kirby, supra* at 689.

Rather, the issue in this case is whether defendant's right to counsel established by our Supreme Court in *People v Anderson*, 389 Mich 155; 205 NW2d 461 (1973), was violated. In *Anderson*, the Court applied the *Wade* requirements to *all* pretrial identification procedures. *Id.* at 168. The *Anderson* Court rejected *Kirby* because it contained no majority opinion regarding a defendant's right to counsel at "pre-indictment" out-of-court corporeal identifications. *Id.* at 170. *Anderson*, however, was decided before the United States Supreme Court's approval in *Moore* of the distinction drawn by the *Kirby* plurality. Thus, it appears that *Anderson* was our Supreme Court's unsuccessful attempt to predict the course that the United States Supreme Court would take in applying the *Wade* requirements to "pre-indictment" identifications.[1]

Again before *Moore*, in *People v Jackson*, 391 Mich 323, 338; 217 NW2d 22 (1974), our Supreme Court

---

[1] *Anderson* relied in part on this Court's decision in *People v Hutton*, 21 Mich App 312; 175 NW2d 860 (1970). In *Hutton*, the Court, while recognizing that the holding in *Wade* applied to "post-indictment" identifications, seized on language in *Wade* suggesting that all compelled confrontations between the accused and the victim or eyewitness were "critical stages" of the prosecution. *Id.* at 320-321. The *Hutton* Court concluded that *Wade* was not intended to be limited to postindictment lineups. *Id.* at 321.

acknowledged that the *Anderson* rules were not mandated by constitutional guarantees:

> The . . . *Anderson* rules . . . represent the conclusion of this Court, independent of any Federal constitutional mandate, that, both before and after commencement of the judicial phase of a prosecution, a suspect is entitled to be represented by counsel at a corporeal identification . . . .

Nevertheless, the *Jackson* Court, again on an unspecified basis, reaffirmed the *Anderson* rules in the exercise of its "constitutional power to establish rules of evidence applicable to judicial proceedings in Michigan courts," in order to "preserve best evidence eyewitness testimony from unnecessary alteration by unfair identification procedures . . . ." *Id.* at 338-339; see also *id.* at 354-355 (COLEMAN, J., dissenting).

Of course, the Michigan and federal constitutions may have different meaning. *People v Pickens*, 446 Mich 298, 315; 521 NW2d 797 (1994). However, *Anderson* and *Jackson* did not even mention, much less cite, as a basis for the *Anderson* rules our state analogue of the Sixth Amendment, Const 1963, art 1, § 20. Consequently, neither *Anderson* nor *Jackson* can be read as expanding art 1, § 20 beyond those protections provided by the Sixth Amendment. Indeed, in *People v Cheatham*, 453 Mich 1; 551 NW2d 355 (1996), the Supreme Court recognized, albeit in dicta, that a defendant's right to counsel under Const 1963, art 1, § 20, like the Sixth Amendment right to counsel, " 'attaches only at or after the initiation of adversary judicial proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Cheatham, supra* at 9, n 8, quoting *People v Wright*, 441 Mich 140, 173; 490 NW2d 351

(1992) (RILEY, J., dissenting). As Justice RILEY noted in her dissent in *Wright, supra,* "[v]irtually all Michigan case law regarding the right to counsel tracks the analysis by the United States Supreme Court of the Sixth Amendment right to counsel." *Id.* at 173.

The confusion among panels of this Court resulting from *Anderson* was succinctly explained by Judge WAHLS in his opinion in *People v Marks,* 155 Mich App 203; 399 NW2d 469 (1986):

> Since *Anderson,* the question of on-the-scene identification has been raised in the context of the "constitutional right to counsel," see, e.g., *People v Wilki,* 132 Mich App 140, 142; 347 NW2d 735 (1984), and specifically the "Sixth Amendment right to counsel," see, e.g., *People v Fields,* 125 Mich App 377, 380; 336 NW2d 478 (1983); *People v Turner,* 120 Mich App 23, 33-34; 328 NW2d 5 (1982) . . . ; *People v Coward,* 111 Mich App 55, 62; 315 NW2d 144 (1981) . . . .
>
> While *Anderson* and the above cases from this Court at first glance appear to be Sixth Amendment cases, further inquiry reveals otherwise. In *People v Jackson,* 391 Mich 323, 338; 217 NW2d 22 (1974), the Supreme Court observed that the *Anderson* rules "represent the conclusion of this Court, independent of any Federal constitutional mandate, that, both before and after commencement of the judicial phase of a prosecution, a suspect is entitled to be represented by counsel at a corporeal identification." Furthermore, were *Anderson* a statement of Sixth Amendment law, it would no longer be controlling, because the United States Supreme Court has since approved of the distinction drawn by the *Kirby* plurality but rejected in *Anderson.* [*Marks, supra* at 209-210.][2]

---

[2] The other two judges on the *Marks* panel concurred only in the result of Judge WAHLS' analysis concerning the propriety of the counselless on-the-scene identification in that case.

If we were writing on a clean slate, we would adopt the federal rule, as announced in *Kirby* and adopted in *Moore*, that the right to counsel provided in *Wade* attaches only to corporeal identifications conducted at or after the initiation of adversary judicial criminal proceedings. *Moore, supra* at 226-227. The *Wade* decision was rightly focused on the routine "police station" lineup and show-up procedures employed by the police to obtain evidence for use at trial as a "critical stage" wherein the right to counsel is implicated.[3] The concerns associated with such a stationhouse lineup are simply absent where the police promptly apprehend a suspect and return him to the scene of the crime for identification by the victim. Moreover, we note that defendants still have an independent *constitutional* basis for challenging lineup procedures conducted before the initiation of adversary judicial proceedings that are so unnecessarily suggestive and conducive to irreparable mistaken identification that they amount to a denial of due process. *Stovall v Denno*, 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967); see also *Anderson, supra* at 168.

> When a person has not been formally charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime. [*Kirby, supra* at 691.]

Regardless of the shortcomings in the *Anderson* decision, it remains the law in Michigan, and we must

---

[3] The *Wade* Court, *supra* at 228-233, was concerned with, among other things, the "vagaries of eyewitness identification" and the potential for "improper influence" at such lineups.

therefore accord it appropriate deference. *Boyd v W G Wade Shows*, 443 Mich 515, 523; 505 NW2d 544 (1993). Of particular importance to our analysis is the fact that in *Anderson*, the Supreme Court, in dicta, recognized that the absence of counsel at an eyewitness identification procedure may be justified where there is a prompt, on-the-scene *corporeal* identification within minutes of the crime. *Anderson, supra* at 187, n 23, citing *Russell v United States*, 133 US App DC 77; 408 F2d 1280 (1969). On the basis of this *Anderson* dicta, this Court has adopted three different approaches in analyzing whether a defendant is entitled to counsel during a prompt, on-the-scene corporeal identification. In *People v Dixon*, 85 Mich App 271, 280-281; 271 NW2d 196 (1978), this Court held that when the police have "more than a mere suspicion" that the suspect is wanted for the crime, the officer cannot return the suspect to the scene of the crime but must take him to the police station and have a lineup at which counsel is present.[4]

In *People v Turner*, 120 Mich App 23, 36; 328 NW2d 5 (1982), this Court, recognizing that police officers are "neither lawyers nor high wire trapeze artists," as well as the "practical difficulties that police have in following rules designed to balance constitutional values with good police work," declined to follow the abstruse *Dixon* rule and instead adopted what it apparently believed was a more workable rule. The *Turner* Court held that police officers may conduct

---

[4] *Dixon* relied on *People v Patskan*, 387 Mich 701; 199 NW2d 458 (1972). However, as noted by Judge BASHARA in his dissent in *Dixon*, *Patskan* was decided before *Anderson*. In addition, we note that while *Patskan* involved an on-the-scene identification, *Patskan's* cursory analysis failed to take into account or even note the fact that *Wade* involved a "post-indictment" lineup. *Patskan, supra* at 715.

an on-the-scene identification without the presence of counsel any time promptly after the crime, except where the police have "very strong evidence" that the person stopped is the culprit. According to *Turner*, "[s]trong evidence exists where the suspect has himself decreased any exculpatory motive, *i.e.*, where he has confessed or presented the police with either highly distinctive evidence of the crime or a highly distinctive personal appearance." *Id.* at 36-37.

Rather than simplifying this area, *Turner*'s "very strong evidence" rule appears to be as inherently vague as the "more than a mere suspicion" rule in *Dixon*.[5] We agree with Judge WAHLS that the police cannot reasonably be expected to make a practical decision whether they have "strong evidence" or "very strong evidence" in any given case. *Marks, supra* at 217. In *People v Wilki, supra* at 144, yet another panel of this Court, concerned that "the *Turner* standard will not always be an easy one to apply," interpreted "very strong evidence" to mean "evidence such that the police, acting in good faith, have no reasonable necessity for confirming that the suspect they have apprehended is in fact the perpetrator." *Id.* at 144.[6]

We believe that *Dixon* and *Turner* fail to provide a simple, practical standard consistent with *Anderson* for use by police officers in the field. Therefore, we hold that it is proper and does not offend the *Anderson* requirements for the police to promptly conduct an on-the-scene identification. *People v Purofoy*, 116

---

[5] *Turner* further confused matters by retaining the *Dixon* "more than a mere suspicion" standard where the police have already validly arrested the suspect for an unrelated offense. *Turner, supra* at 37.

[6] The *Wilki* Court's concern about the *Turner* rule is, to say the least, an understatement.

Mich App 471, 480; 323 NW2d 446 (1982); *People v Stanton*, 97 Mich App 453, 458, n 1; 296 NW2d 70 (1980); *People v Tucker*, 86 Mich App 608, 611; 273 NW2d 498 (1978); *People v Williams*, 57 Mich App 612, 614; 226 NW2d 584 (1975); see also *Marks, supra* at 214. Such on-the-scene confrontations are reasonable, indeed indispensable, police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance. *Tucker, supra* at 611. Whatever the perceived problems of on-the-scene confrontations, it appears to us that prompt confrontations will, if anything, promote fairness by assuring greater reliability. *Russell, supra* at 81.[7]

Applying the on-the-scene exception to the instant case leads us to conclude that the identification procedure employed here did not violate defendant's *Anderson*-based "right to counsel." Following the shooting, the victim was able to drive to the Subway restaurant about a quarter-mile away. Bleeding severely and awaiting an ambulance, the victim told the police that he had been shot, and he gave the police general descriptions of his assailants. The police found defendant and his accomplices in the immediate vicinity of the shooting and quickly took them to the Subway restaurant where the victim positively identified defendant as the shooter. This on-the-scene corporeal identification, within minutes after

---

[7] Again, we believe that due process provides sufficient protection against unreliable pretrial identifications obtained through unnecessarily suggestive procedures. *Moore, supra* at 227; see also *Stovall, supra*; *Marks, supra* at 217.

the shooting occurred, was not only reasonable, but necessary police practice. We find no error.

II

Defendant next argues that the on-the-scene identification by the victim was unduly suggestive and that the in-court identification should therefore have been suppressed as having no independent basis. Defendant's challenge below was directed to the absence of counsel at the on-the-scene identification, not to its suggestiveness. Consequently, there is no record on which we can review whether the on-the-scene identification was unduly suggestive. The issue is therefore not preserved for appellate review, and we decline to address it. See *People v Lee*, 391 Mich 618, 626-627; 218 NW2d 655 (1974); *People v Daniels*, 163 Mich App 703, 710-711; 415 NW2d 282 (1987).

III

Next, defendant maintains that the jury's verdict was against the great weight of the evidence presented at trial. Because defendant failed to preserve this issue for appeal by moving timely for a new trial below, we decline to address it. MCR 2.611(A)(1)(e); *People v Dukes*, 189 Mich App 262, 264; 471 NW2d 651 (1991).

IV

Defendant next argues that he must be resentenced because the trial court misinterpreted the instructions regarding the application of prior record variable 5 (PRV 5) (prior misdemeanor convictions) and prior record variable 7 (PRV 7) (subsequent/concurrent felony convictions). Defendant's challenge does not state a cognizable claim for relief. *People v Mitchell,*

454 Mich 145, 176-177; 560 NW2d 600 (1997). Because the sentencing guidelines do not have the force of law, "[t]here is no juridical basis for claims of error based on alleged misinterpretation of the guideline, *instructions regarding how the guidelines should be applied,* or misapplication of guideline variables." *Id.* (emphasis added). Consequently, defendant would not be entitled to resentencing on this basis even if we agreed that the guidelines' were misscored. We note that defendant does not claim that the guidelines' scores were based on inaccurate information or that his sentence was disproportionate.

Finally, defendant argues that he is entitled to resentencing because his sentencing information report stated that the guidelines' range was "180 to 300 [months] or life" when the actual range, according to the trial court's own discretionary scoring of the guidelines, should have been 120 to 300 months. Defendant did not object to this inaccuracy at sentencing and so has not preserved this issue for appeal. MCR 6.429(C). Accordingly, we will not review it.

Affirmed.

DOCTOROFF, P.J., concurred.

MICHAEL J. KELLY, J., concurred in the result only.