# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 21, 2017

Plaintiff-Appellee,

v

No. 333312
Wayne Circuit Court
LC No. 16-000728-01-FC

FREDDY LOUIS,

Defendant-Appellant.

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, assault with a dangerous weapon (felonious assault), MCL 750.82, and possession of a firearm during the commission or attempted commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 72 to 180 months' imprisonment for the armed robbery conviction, 30 to 48 months' imprisonment for the felonious assault conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. PRE-TRIAL IDENTIFICATION

Defendant argues the pretrial identification procedures utilized by police violated his due process rights. He claims that a pre-trial voice identification, an on-the-scene identification, a single photographic identification, and a corporeal lineup were improper or unduly suggestive. Based on these errors, defendant claims he was denied the effective assistance of counsel because his counsel did not object to the use of the identifications at trial.

## A. STANDARD OF REVIEW

"A motion to suppress evidence must be made prior to trial or, within the trial court's discretion, at trial." *People v Gentner, Inc*, 262 Mich App 363, 368; 686 NW2d 752 (2004). Defendant did not move to suppress the identification evidence in a pretrial motion, nor did defendant object to the admission of the identification evidence at trial. Thus, the issue is unpreserved, and "this Court reviews the issue for plain error affecting his substantial rights." *People v Perry*, 317 Mich App 589, 600; 895 NW2d 216 (2016), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third

-1-

requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. The defendant has the burden of persuasion as it pertains to prejudice. *Id*.

## B. VOICE IDENTIFICATION

Defendant first argues that evidence of Dyquan Harris's voice identification should have been suppressed at trial because the witnesses were not familiar with defendant, had never heard his voice before, and did not testify to any peculiar characteristics in his voice. We disagree.

"The fairness of an identification procedure is evaluated in light of the total circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification." *People v Murphy (On Remand)*, 282 Mich App 571, 584; 766 NW2d 303 (2009). "Vocal identification evidence is competent if the identifying witness demonstrates 'certainty . . . in the mind . . . by testimony that is positive and unequivocal.' " *Id.*, quoting *People v Hayes*, 126 Mich App 721, 725; 337 NW2d 905 (1983). "Further, voice identification must be based on a peculiarity in the voice or on sufficient previous knowledge by the witness of the person's voice." *Murphy*, 282 Mich App at 584 (citation and quotation marks omitted).

Harris's vocal identification of defendant was competent because he demonstrated certainty that defendant was the individual who robbed him and his two friends, Deovonta Andrews and Davonte Hardman. *Id*. Harris testified unequivocally that defendant, after pointing a gun in Harris's face, said, "give me yo' bike." Hardman testified to the same effect. Defendant was approximately 3 feet away from Harris, Andrews, and Hardman when he pointed the gun at them and demanded their bicycles. While sitting in the police vehicle at the scene of the arrest, all three teenagers heard defendant through the open car window. Specifically, Harris testified that he heard defendant say, "[T]hey gave me they bike. I didn't take they bike." Immediately, and without prompting, all three teenagers stated, "that's him." Based on this statement and the one defendant made during the robbery, Harris recognized and identified defendant by his voice. Because Harris's testimony demonstrated certainty in his mind that defendant was the man who robbed him and his friends, Harris's voice identification of defendant is competent.

Defendant argues that the complaining witnesses were not familiar with defendant, had never heard his voice before, and did not testify to any peculiar characteristics in defendant's voice. This argument is without merit. Harris, Andrews, and Hardman had heard defendant's voice on a previous occasion—when he robbed them. Although there was no testimony regarding peculiar characteristics in defendant's voice, defendant's initial statement of "give me yo' bike" was sufficient previous knowledge by Harris of defendant's voice. Approximately one hour passed between the time when the robbery occurred and the arrival of Harris, Andrews, and Hardman at the scene of arrest. Because Harris heard defendant's voice first hand from a short distance away and heard it again within an hour of the first occasion, Harris had sufficient previous knowledge of defendant's voice. *Murphy*, 282 Mich App at 584.

## C. ON-THE-SCENE IDENTIFICATION

Defendant next argues that the on-the-scene identification was unduly suggestive and led to a substantial likelihood of misidentification. Specifically, defendant argues that because the defendant was standing alone when Harris, Andrews, and Hardman made their on-the-scene identification of defendant, this renders it impermissibly suggestive. We disagree.

This Court has held "that it is proper . . . for the police to promptly conduct an on-the-scene identification." *People v Winters*, 225 Mich App 718, 727-728; 571 NW2d 764 (1997). "Such on-the-scene confrontations are reasonable, indeed indispensable, police practices because they permit the police to immediately decide whether there is a reasonable likelihood that the suspect is connected with the crime and subject to arrest, or merely an unfortunate victim of circumstance." *Id*. at 728.

In *Winters*, an individual was shot, able to drive to a safe location, and give police general descriptions of his assailants. *Id*. After police found the assailants near the scene of the shooting, the police took them to where the victim was and the victim positively identified Winters as the shooter. *Id*. The *Winters* Court found that "[t]his on-the-scene corporeal identification, within minutes after the shooting occurred, was not only reasonable, but necessary police practice." *Id*. at 728-729.

Here, Harris, Andrews, and Hardman were robbed at gunpoint by defendant. Two officers, Michael Jackson and Darrell Patterson, were on patrol and saw a struggle over the bike, saw defendant secure the bike, and then watched as he pedaled away. The two officers drove up to defendant and asked what happened. According to Jackson, defendant said "the kids gave me this bike." Defendant then pedaled away at a quick speed, the officers followed, and defendant eventually abandoned the bike and fled on foot. Jackson jumped out of the vehicle and followed defendant while Patterson drove back to the scene of the crime and picked up the three teenagers. Backup officers apprehended defendant approximately 25 minutes later. Patterson picked up Jackson, and the two officers drove Harris, Andrews, and Hardman to the scene of defendant's arrest to see if the three teenagers could identify defendant. At the scene of the arrest, all three teenagers positively identified defendant as the assailant, and the two officers identified defendant as the person they stopped directly after the robbery. Importantly, the three teenagers identified defendant without being prompted by the officers, proving there was minimal police influence. Having Harris, Andrews, and Hardman in the back of their police vehicle was not only reasonable, but necessary for the purpose of identifying the assailant. See *id*. at 728-729 (finding police action to be reasonable and necessary).

Defendant asserts that it is problematic that an hour passed between the time the robbery occurred and when Harris, Andrews, and Hardman saw defendant at the scene of arrest and identified him as the robber. This argument fails. In *People v Libbett*, 251 Mich App 353, 361; 650 NW2d 407 (2002), a vehicle was stolen at gunpoint at around midnight, the police spotted the suspects approximately an hour later, a car chase began, two of the four occupants of the vehicle fled on foot, and officers apprehended two men approximately 20 minutes later. In total, approximately two hours passed between the time that the vehicle was stolen and the time that the owner of the vehicle was taken to identify the suspects. *Id*. at 355-357, 361. This Court "conclude[d] that the holding of an on-the-scene identification almost two hours after the crime

was committed, particularly where the identification took place only twenty minutes after police apprehended the suspects, was not unreasonable under the facts presented." *Id*. at 363.

Here, approximately one hour passed between the robbery and the on-the-scene identification. Within that time, defendant had fled from the police, was apprehended at another location, and the three teenagers were transported to the scene. "[I]dentification within that time frame permitted the police to immediately decide whether there was a reasonable likelihood that" defendant, having been found in the area and matching the description of the robber, was "connected with the crime and subject to arrest, or merely [an] unfortunate victim[] of circumstance." *Id*. at 361-362. It was reasonable for the police to have Harris, Andrews, and Hardman identify whether defendant was the person who robbed them, and "the on-the-scene identification was conducted as promptly as was reasonable under the circumstances and did not violate defendant's rights." *Id*. at 362.

## D. PHOTOGRAPHIC IDENTIFICATION

Defendant argues that police officers employed improper identification procedures when they gave Harris and Hardman a single photograph of defendant, creating a substantial likelihood of misidentification. We disagree.

"A photographic identification procedure violates a defendant's right to due process when it is so impermissibly suggestive that it creates a substantial likelihood of misidentification." *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169 (2014) (citations omitted). "Showing a witness a single photograph is considered to be one of the most suggestive photographic identification procedures." *Id*. (citation omitted). That said, whether the procedure "violates due process depends on the totality of the circumstances." *Id*. (citations omitted).

Defendant relies on a recent order of the Michigan Supreme Court that concluded a single-photograph identification procedure was so impermissibly suggestive that it gave rise to a substantial likelihood of misidentification. *People v Thomas*, ___ Mich ___, ___ (2017) (Docket No. 155245); slip op at 2. The *Thomas* Court reversed our opinion, *People v Thomas*, unpublished opinion per curiam of the Court of Appeals, issued December 8, 2016 (Docket No. 326311), and held that the trial court did not err when it suppressed the photographic identification as impermissibly suggestive, concluded there was no independent basis to support an in-court identification, and dismissed all charges against the defendant. *Thomas*, ___ Mich at ___; slip op at 2. The Supreme Court explained that "the police officer's presentation of a single photograph to the victim accompanied by the question 'was this the guy who shot you?' was highly suggestive." *Id*. at ___; slip op at 1. In that case, the parties did not dispute the following facts, which were the basis for the trial court's suppression of the identification:

> [T]he victim viewed the assailant's partially obscured face for no more than seven seconds on a dark city street with no streetlights while a gun was pointed at him. The description the victim gave to police officers was generic and could have described many young men in the area; moreover the victim's description of the assailant changed between his first interview and his follow-up interview at the hospital. [*Id*. at ___; slip op at 1.]

Based on these circumstances, the Supreme Court held, "We agree with the trial court's assessment of reliability based on the relevant totality of the circumstances. Similarly, the trial court did not err in determining that the victim's in-court identification lacked an independent basis sufficient to 'purge the taint caused by the illegal' identification procedure used here." *Id.* at ___; slip op at 2. (citations omitted).

Defendant's reliance on *Thomas* is unavailing, and in light of the totality of the circumstances, we hold that defendant's due process rights have not been infringed. The photograph was shown to Harris and Hardman a day after the robbery and "was used only to help confirm the identity of the person the witness[es] had already identified" as the robber. *Woolfolk*, 304 Mich App at 457-458. Not only did they have an adequate opportunity to observe defendant's face and hear his voice during the robbery, all three teenagers identified defendant at the scene of his arrest. Had the photographic identification been the first or only method of pre-trial identification, we would be inclined to rule in line with *Thomas*. However, Harris, Hardman, and Andrews had already identified defendant before they viewed the single photograph. Therefore, unlike *Thomas*, "the use of the single photograph did not create a substantial likelihood of misidentification and, therefore, did not violate defendant's right to due process." *Id.* at 458 (citations omitted). Moreover, even if the photographic identification was impermissible under these circumstances, the prior identifications also provide a sufficient basis to support the in-court identification. See *People v Gray*, 457 Mich 107, 115; 577 NW2d 92 (1998) (stating that "[t]he independent basis inquiry is a factual one, and the validity of a victim's in-court identification must be viewed in the light of the totality of the circumstances") (citation and quotation marks omitted).

E. CORPOREAL LINEUP

Defendant argues that the corporeal lineup conducted a few weeks after the robbery was unfair. Specifically, defendant argues that the disparity between defendant's age and the ages of the other lineup participants led to a substantial likelihood of misidentification. We disagree.

"A lineup can be so suggestive and conducive to irreparable misidentification that it denies an accused due process of law." *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002) (citation omitted). When determining whether a corporeal lineup violates due process, the suggestiveness of the lineup must be examined in light of the totality of the circumstances. *People v McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013) (citation omitted).

> As a general rule, physical differences between a suspect and other lineup participants do not, in and of themselves, constitute impermissible suggestiveness. . . . Differences among participants in a lineup are significant only to the extent they are apparent to the witness and substantially distinguish defendant from the other participants in the line-up. . . . It is then that there exists a substantial likelihood that the differences among line-up participants, rather than recognition of defendant, was the basis of the witness' identification. [*People v Henry (After Remand)*, 305 Mich App 127, 161; 854 NW2d 114 (2014) (citation omitted).]

-5-

This Court has held that a lineup "was not impermissibly suggestive despite alleged age . . . differences between the defendant and the other participants" where the defendant's appearance was substantially similar to that of the other participants. *McDade*, 301 Mich App at 357, citing *People v Horton*, 98 Mich App 62, 67-68; 296 NW2d 184 (1980). Moreover "[p]hysical differences generally relate only to the weight of an identification and not to its admissibility." *Hornsby*, 251 Mich App at 466 (citation omitted).

In the instant case, all of the individuals in the lineup were black males. Defendant was 22 years old when the lineup was conducted. The other lineup participants were 25, 31, 40, 42, and 51 years old. During the investigation, the witnesses described the robber as being in his early to mid-20s. "If one were to accept defendant's complaints about the slight physical differences or variations, it would make it nearly impossible for the police to compose a lineup, forcing authorities to search for 'twin-like' individuals to match against a defendant." *McDade*, 301 Mich App at 358. Harris had previously identified defendant at the scene of defendant's arrest and confirmed defendant's identity through the photographic identification. Thus, the age differences between defendant and the other participants in the lineup were not impermissibly suggestive and did not lead to a substantial likelihood of misidentification. Also, the differences in age between defendant and the other participants would "generally relate only to the weight of an identification and not to its admissibility." *Hornsby*, 251 Mich App at 466 (citation omitted). Accordingly, we conclude that the pre-trial identification procedures utilized were not impermissibly suggestive, and therefore, did not violate defendant's due process rights.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts that he received the ineffective assistance of counsel when his trial counsel failed to seek pretrial suppression of the identification testimony. We disagree. As previously discussed, the identification procedures at issue here were not impermissibly suggestive. As a result, a motion to suppress the pretrial identifications that resulted from those procedures would have been futile. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *Henry*, 305 Mich App at 141 (citation omitted). Therefore, trial counsel's performance was not deficient.

## III. EXCITED UTTERANCE

Defendant argues that the trial court abused its discretion when it admitted the teenager's statements, through the testimony of an officer, as an excited utterance. Because defendant failed to include this argument in the statement of the questions presented, the issue is not properly presented for appeal and deemed waived. MCR 7.212(C)(5); *People v Fonville*, 291 Mich App 363, 383; 804 NW2d 878 (2011). Nonetheless, the trial court did not abuse its discretion when it admitted the statement as an excited utterance.

Under MRE 803(2), an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "The rule allows hearsay testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance

will be spontaneous and trustworthy." *People v McLaughlin*, 258 Mich App 635, 659; 672 NW2d 860 (2003) (citations and quotation marks omitted).

There are "two primary requirements for excited utterances: 1) that there be a startling event, and 2) that the resulting statement be made while under the excitement caused by the event." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). "[T]here is no express time limit for excited utterances." *Id*. at 551-552. "While the time that passes between the event and the statement is important in determining whether the declarant was still under the stress of the excitement when the statement was made, the focus of the exception is on the declarant's 'lack of capacity to fabricate, not the lack of time to fabricate.' " *People v Layher*, 238 Mich App 573, 583; 607 NW2d 91 (1999), quoting *Smith*, 456 Mich at 551. That is, "[t]he pertinent inquiry is not whether there has been time for the declarant to fabricate a statement, but whether the declarant is so overwhelmed that she lacks the capacity to fabricate." *McLaughlin*, 258 Mich App at 659-660. "The question is not strictly one of time, but of the possibility for conscious reflection." *Smith*, 456 Mich at 551. "Physical factors, such as shock, unconsciousness, or pain, may prolong the period in which the risk of fabrication is reduced to an acceptable minimum." *Id*. at 552 (citation and quotation marks omitted). "The trial court's determination whether the declarant was still under the stress of the event is given wide discretion." *Id*. (citation omitted).

Harris, Andrews, and Hardman were robbed at gunpoint at approximately 9:00 p.m. Armed robbery is a startling event. *In re Brown (After Remand)*, 464 Mich 135, 146 n 4; 626 NW2d 403 (2001). The officer testified at trial that when the three teenagers were in the back of the police vehicle, he heard them all say, "that's him." They made the statement at approximately 9:55 p.m. after defendant was arrested. Although the statement was made approximately an hour after the startling event, "there is no express time limit for excited utterances," *Smith*, 456 Mich at 551-552, and "the focus of the exception is on the declarant's lack of *capacity* to fabricate, not the lack of time to fabricate," *Layher*, 238 Mich App at 583 (citation and quotation marks omitted) (emphasis added). The three teenagers likely would have been in shock or distress, or both, after having had a gun directed at their faces only an hour earlier. For these reasons, the trial court did not abuse its discretion when it admitted the officer's testimony regarding the teenagers' identification of defendant under the excited utterance exception.

Affirmed.

/s/ Jane M. Beckering
/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron