*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
April 23, 2019

v

No. 340981
Montcalm Circuit Court
LC No. 2017-022572-FH

JOSEPH FRANCIS BORCZAK II,

Defendant-Appellant.

Before: BECKERING, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals by right his jury conviction for one count of assault with a dangerous weapon (felonious assault), MCL 750.82.[1] He was sentenced to nine months to four years' imprisonment. We affirm.

## I. BACKGROUND

This case arose from defendant aiming a moving vehicle toward Joseph Bagallay three times. Bagallay was the boyfriend of defendant's girlfriend's daughter. The day of the incident was defendant's first time meeting Bagallay. Defendant was already engaged in an argument with his girlfriend when her daughter and Bagallay arrived. Tensions rose as the daughter wanted her mother to leave with her and the mother chose to stay with defendant. At some point, defendant turned his attention toward Bagallay who was still in his girlfriend's vehicle. Defendant "started staring [Bagallay] down," yelled multiple racial slurs at Bagallay, threatened to "kick [his] ass," and asked Bagallay, "what are you staring at" and if he wanted a "piece of this." Bagallay testified that he told the defendant that he did not want any altercations. He testified that he exited the vehicle over concern for his girlfriend, and started walking toward defendant. Defendant went to his own vehicle, revved the engine, put it in drive, and accelerated toward Bagallay. Bagallay jumped on the hood of his girlfriend's vehicle to avoid being struck by defendant's car. Defendant backed up his vehicle. Bagallay testified that he "lost [his] cool" and asked defendant if he "want[ed] to fight." Then, defendant accelerated toward Bagallay a

---

[1] Defendant was found not guilty of an additional charge of felonious assault.

second time chasing Bagallay into some trees. Bagallay testified that defendant then backed out towards the road as if he were leaving, but when Bagallay came out from the trees, the defendant drove toward him a third time. Bagallay testified that he ran between his girlfriend's vehicle and her mother's vehicle to avoid being struck by defendant who almost drove into the vehicle belonging to Bagallay's girlfriend. Bagallay testified that after the third time defendant drove at him, he chased the defendant's vehicle toward the road and grabbed onto the door handle because he wanted to detain him until police arrived. He testified that the defendant threw tools out of the vehicle, yelled racial slurs at him, stuck one foot out the window to try to kick Bagallay off the vehicle, and yelled that he would kill Bagallay. The record is unclear as to how this confrontation ended. At some point, Bagallay got back into his girlfriend's vehicle and she drove them to her grandmother's house.

## II. DIRECTED VERDICT

Defendant first argues that the trial court erred by denying his motion for a directed verdict based on there being no evidence that he intended to assault Bagallay with his vehicle. We disagree.

## A. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for a directed verdict "to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122-123; 631 NW2d 67 (2001).

## B. ANALYSIS

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (citation omitted). An assault "is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v Gardner*, 402 Mich 460, 478; 265 NW2d 1 (1978) (citation omitted). "Intent is a mental attitude made known by acts" and has been defined as "a secret of the defendant's mind," which can be ascertained through words or actions, with recognition that a defendant's actions often "speak louder than words." *People v Strong*, 143 Mich App 442, 452; 372 NW2d 335 (1985) (citations omitted). The jury may draw the inference as to the intent with which a particular act was done as they draw all other inferences, from any fact in evidence that to their minds fully proves its existence. *People v Medlyn*, 215 Mich App 338, 344; 544 NW2d 759 (1996). "Because intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). The inquiry should therefore focus on the objective actions and demeanor of the perpetrator in light of the circumstances to

determine whether they would have created a fear or apprehension of immediate injury on the part of a reasonable person confronted with similar conduct.

The circumstantial and direct evidence presented at trial was sufficient to establish that defendant had the requisite intent to assault Bagallay with his vehicle. He verbally threatened to physically assault him. Defendant then entered his vehicle and drove his vehicle at a high rate of speed toward the fleeing Bagallay three times. The threat and repeated vehicle charges alone are sufficient for a jury to find that his actions were both the subject of a conscious decision on his part and intended to cause, at the least, the threat of an assault. Defendant argues that because the victim ran between two other cars, defendant could not have struck him, that any apprehension of a battery would be unreasonable, and that the victim was never in fear of a battery. In addition to the objective evidence that Bagally took extreme evasive action, Bagallay however testified that the entire incident frightened him, and that he felt his life was in danger. Viewing the testimony in a light most favorable to the prosecution, there was sufficient evidence for a rational jury to conclude that defendant purposely drove his vehicle at Bagallay, and on at least one of those three occasions, defendant did so with the intent to injure Bagallay with his vehicle or to place him in reasonable apprehension of an immediate battery.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that there was insufficient evidence presented at trial to find him guilty of felonious assault because the testimony used to convict him from Bagallay and Bagallay's girlfriend was incredible and inconsistent. Again, we disagree.

## A. STANDARD OF REVIEW

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002).

To sustain a conviction, due process requires sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). In deciding challenges to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Bennett*, 290 Mich App 465, 471-472; 802 NW2d 627 (2010). In applying this standard, we "must draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (quotation marks and citation omitted). The prosecution is not required to disprove every plausible alternative explanation of the evidence proffered by a defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## B. ANALYSIS

We will not resolve anew the issue of witness credibility. *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999). "Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." *Wolfe*, 440 Mich at 515 (citation omitted). Questions of credibility should be resolved by the

trier of fact and should not be revisited on appeal. *People v Daoust*, 228 Mich App 1, 17; 577 NW2d 179 (1998), overruled on other grounds 482 Mich 540 (2008).

The jury was in the best position to assess defendant's claim that Bagallay and his girlfriend were too inconsistent to be considered credible. The jury in this case found the testimonies of Bagallay and his girlfriend more credible than defendant's. Neither minor inconsistencies nor the fact that Bagallay testified to chasing defendant after the incident render the testimony of Bagallay and his girlfriend incredible. We defer to the jury's credibility determination, and we hold that there was sufficient evidence for the jury to conclude that defendant committed felonious assault.

## IV. INCONSISTENT VERDICTS

Defendant next argues that the jury reached an inconsistent verdict that was either the result of confusion or the jury engaged in an impermissible compromise. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

When a defendant is tried before a jury, he must raise issues with the jury verdict in a timely filed motion in the trial court to preserve the issue. See *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). Defendant failed to raise the issue regarding inconsistent jury verdicts in the trial court. Therefore, this issue is unpreserved. We review de novo questions concerning inconsistent jury verdicts. *People v Russell*, 297 Mich App 707, 722; 825 NW2d 623 (2012). However, because defendant failed to raise this issue below, our review is limited to whether there was plain error that affected defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

## B. ANALYSIS

Inconsistent verdicts within a single jury trial are permissible and do not require reversal in the absence of confusion by the jury, a misunderstanding of the instructions, or impermissible compromises. *People v Putman*, 309 Mich App 240, 251; 870 NW2d 593 (2015). The defendant bears the burden of providing evidence of juror confusion, misunderstood instructions, or impermissible compromise. *Id*.

Defendant contends that impermissible confusion or compromise was evidenced by the jury's acquittal of one felonious assault charge and not the other, even though the conduct giving rise to each of the charges was the same. Defendant's assertion is incorrect where Bagallay and his girlfriend's testimony established that there were three separate acts of defendant driving his vehicle at Bagallay. Defendant was only charged for two of these acts. Of those two, the jury was free to believe all, none, or part of the witnesses' testimony supporting them. See *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). "[J]uries are not held to any rules of logic nor are they required to explain their decisions." *Putman*, 309 Mich App at 251. (quotation marks and citation omitted). In this case, the jury was entitled to believe Bagallay's testimony related to one incident of defendant driving at him and not another. As previously noted, it is the province of the jury to make credibility determinations and an appellate court will not resolve anew issues of witness credibility. *Avant*, 235 Mich App at 506.

Defendant also argues the jury was confused by the court's misidentification of the victims in its preliminary instructions to the jury. The trial court misspoke by adding a victim to Count I who was not part of the case. The trial court however quickly corrected itself saying, "I think we had the wrong name in there" and stated the correct name involved. The trial court went on to use the correct name in its instructions to the jury on the second count and at the end of the trial. Defendant has failed to show that this corrected error created confusion amongst the jury to cause the jury to find the defendant not guilty on count one but guilty on count two.

To the extent defendant argues that the timing of the juror deliberations and the plausibility of the facts led to the conclusion that the verdicts were the result of improper compromise, that argument is similarly without merit. The jury's verdict did not occur immediately after the deadlocked jury instruction was provided. The instruction was given to the jury on the second day of trial, and the jury did not render its verdict until deliberating for another two hours on the third day of the trial. The jury's continuation of its deliberations after the deadlocked jury instruction and the answers to its questions could as easily be construed as having taken the instructions that it received to heart and engaging in a deliberative and thorough review of the evidence and testimony and leading to a resolution accepted by all of the jurors. "Jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Additionally, the weighing of the evidence is the realm of the jury and will not be disturbed on appeal. *Avant*, 235 Mich App at 506. Defendant has failed to prove that the verdicts were the result of an impermissible compromise.

## V. GREAT WEIGHT OF THE EVIDENCE

Defendant last argues that the jury's verdict is against the great weight of the evidence because the witnesses against him were not credible. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve an argument that the verdict was against the great weight of the evidence, a defendant must timely move for a new trial in the trial court. *People v Winters*, 225 Mich App 718, 729; 571 NW2d 764 (1997). Defendant did not raise this issue in a motion for a new trial in the trial court. Therefore, this issue is unpreserved. An unpreserved claim challenging whether a verdict is against the great weight of the evidence is reviewed for plain error affecting substantial rights. Under the plain error rule, a defendant must establish that error occurred, the error was clear and obvious, and that it affected his substantial rights. *Carines*, 460 Mich at 763.

### B. ANALYSIS

A jury verdict will be vacated "only when it does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993) (quotation marks and citation omitted). The test is "whether the verdict was manifestly against the clear weight of the evidence." *Id*. The hurdle that a judge must clear in order to overrule a jury and grant a new trial "is unquestionably among the highest in our law." *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998) (quotation marks and citation omitted). "Absent exceptional circumstances, issues of witness credibility are for the

trier of fact." *Unger*, 278 Mich App at 232. Exceptional circumstances include when: (1) the testimony contradicts indisputable physical facts or laws; (2) the testimony is patently incredible or defies physical realities; (3) the testimony is so inherently implausible that it could not be believed by a reasonable trier of fact; or (4) the testimony has been seriously impeached and the case is marked by uncertainties and discrepancies. *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998).

Defendant's challenge here again is to the plausibility of Bagallay's and his girlfriend's account of the events. Defendant notes isolated inconsistencies in their testimonies and argues the probability that defendant could have had his hands and feet out the window while driving away after the third incident. Defendant has failed to demonstrate that the inconsistencies deprived the testimony of all probative value. They each testified from their personal witness of the same event. Whether defendant had one or two feet out of the window was inconsequential. The evidence admitted at trial supported the jury's conclusion that defendant assaulted Bagallay with his vehicle. Defendant's driving away occurred after the assault was completed. Again, the jury was in the best position to assess the credibility of Bagallay and his girlfriend as compared to defendant. In this case, it found the testimonies of Bagallay and his girlfriend more credible than defendant. We defer to the jury's credibility determination.

Affirmed.

/s/ Jane M. Beckering
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens