*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JORDAN ANTHONY HERNANDEZ,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2025
12:35 PM

No. 366846
Oakland Circuit Court
LC No. 2021-278261-FH

Before: MALDONADO, P.J., and CAMERON and YOUNG, JJ.

PER CURIAM.

Defendant, Jordan Hernandez, appeals as of right his April 25, 2023 convictions for felon in possession of a firearm, MCL 750.224f and felony firearm (second offense), MCL 750.227b. On appeal, Hernandez argues that (1) the convictions violate his state and federal right to bear arms; (2) the prosecutor failed to present sufficient evidence to establish that Hernandez possessed the firearm on the date of the offense/the verdict went against the great weight of evidence; and (3) Hernandez's trial counsel was ineffective for failing to object to the admission of the recovered ski masks and a Facebook live video into evidence. We disagree with Hernandez's arguments and affirm his convictions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2021, Detectives Nathanial Rogers and Matthew Morrison from the Oakland County Sheriff's Office were assigned to the Directed Patrol Unit (DPL), a unit primarily focusing on street level crimes, including drug trafficking, gun violence, and gang activity in Pontiac. Rogers was monitoring social media and came across a Facebook live stream video depicting several individuals known to the DPL from prior investigations, including Marcus Myles. Myles possessed a black handgun on the live stream video, which was seen shoved in his front, right pocket, showing the rear site, the back plate, and the entirety of the rear grip of the handgun. Rogers heard someone on the live stream say that they were at the Suites on Featherstone, a hotel in Auburn Hills.

Rogers informed other members of the DPL about what he had seen and multiple units drove to set up stationary surveillance at the hotel to wait for any of these individuals to exit. Morrison was stationed in a parking lot across the street in a semi-marked police car. Using binoculars, Morrison observed Myles and an unidentified female exit the front of the hotel and walk up to a parked blue Chrysler Pacifica. Myles walked up to the front passenger window and began conversing with someone sitting in the front seat. Several minutes later, Morrison observed the front seat passenger and the rear right seat passenger exit the Pacifica and walk into the hotel. The front seat passenger was later identified as Hernandez and the rear right seat passenger was later identified as Andre Jones. Detectives continued surveillance and about 15 to 20 minutes later, Myles, Hernandez, and Jones exited the hotel and got into the Pacifica. Rogers saw the Pacifica exit the parking lot, began to follow it, and told Morrison to follow as well. The Pacifica rolled through a stop light and Morrison then initiated a traffic stop. Additional law enforcement, including Rogers, came for backup.

Detectives approached the Pacifica and found Pedro Hernandez[1] in the driver seat, Hernandez in the front passenger seat, Myles behind the driver's seat, and Jones behind the passenger seat. Detectives pulled each individual out of the car one at a time, detained them in handcuffs, and patted down each individual for weapons.

After removing the occupants, Rogers and Morrison searched the vehicle. The detectives found an orange bag behind the center counsel with four handguns inside: a FN-40, a Canik 9-millimeter, a Beretta 9-millimeter, and a Smith and Wesson. They also found two black ski masks elsewhere in the car. Rogers claimed that where the bag was located, it was accessible from the front driver seat, the front passenger seat, and the back seat. All four occupants were arrested.

Jones admitted that the Canik was his firearm. According to a search in the Law Enforcement Information Network, the FN-40 was reported as stolen, and both the Beretta (with a weapon-mounted light and a red dot laser) and Smith and Wesson were unregistered. During processing at the county jail, law enforcement found a spare magazine on Pedro for the Smith and Wesson. The spare magazine fit into the Smith and Wesson, and the ammunition within the spare magazine matched the Smith and Wesson recovered from the orange bag. Law enforcement swabbed the Smith and Wesson, FN-40, and the Beretta for DNA. The detectives also swabbed the four vehicle occupants and sent the swabs to the Oakland County Sheriff's Office Crime Lab for analysis and comparison.

Hernandez was charged with felon in possession of a firearm, MCL 750.224f and felony firearm (second offense), MCL 750.227b. He was tried individually by a jury over the course of two days. At trial, Brigid Lockhart, a lab scientist in the biology unit at the Oakland County Sheriff's Office, testified as an expert in the field of forensic biology and DNA analysis. She evaluated swabs coming from the FN-40, the Beretta, and the Smith and Wesson, and was able to develop a DNA profile connected to each firearm. Lockhart did not develop a DNA profile for the Canik because Jones had admitted it was his. Lockhart compared the DNA profiles from the guns to all four of the individuals' DNA that had been sent to the lab. The analysis revealed very

---

[1] Given that Pedro Hernandez shares the same last name as Jordan Hernandez, this opinion will refer to Pedro Hernandez by his first name.

strong support that Myles contributed DNA on the FN-40, very strong support that Hernandez contributed DNA on the Beretta, and very strong support that Pedro contributed DNA on the Smith and Wesson. In explaining her process of analysis, Lockhart testified that secondary DNA transfers occur when DNA is transferred between an object or a person through an intermediary. The jury also heard from Lockhart that it would be possible for two people to shake hands, and if the first person afterwards picks up a knife, that knife could contain the second person's DNA as well without actually touching the knife.

At trial, Hernandez testified that he went to the hotel in Auburn Hills for a "little party" and did not see any Facebook live videos being made while he was there. Hernandez testified that while in the hotel room, he saw that Myles had a gun in his pants pocket. Hernandez stayed in the room for approximately ten minutes before leaving with Myles and Jones. Hernandez was not sure if Myles still had the gun on him when they left the hotel room; Hernandez did not specifically see Myles put the gun down in the hotel room, but he did not see it in Jones' pocket when they walked out. He also did not see Jones or Pedro with a gun when he got back into the car.

When they left the hotel, the plan was to drop Hernandez back off at home and then to take Myles home. Hernandez testified that after they pulled out of the parking lot, as the vehicle was pulled over for a traffic violation, Pedro told Hernandez there was a firearm in the vehicle. When the police turned on their patrol lights, Pedro grabbed the firearm out of the glove compartment, but he dropped it on the floor next to Hernandez's feet. Hernandez tried to push the gun back over to Pedro. Pedro grabbed the gun and handed it to a backseat passenger. Hernandez was not exactly sure where the gun was placed. Hernandez argued with Pedro and Myles about having guns in the car and told everyone they had to take responsibility for their own guns. Hernandez testified that he did not have a gun on him that night and did not bring a gun into the car. The only gun he touched was the one from the glovebox after Pedro dropped it on the floor in front of him. Hernandez did not feel it was necessary to tell the police about the guns in the car because he assumed everyone would take responsibility for their own firearm.

After the occupants were removed, patted down, and placed in patrol cars, police pulled Hernandez back out to figure out what happened. Hernandez testified that he was not specifically asked if anyone had a gun, so he did not mention it to the police. Hernandez had not seen the orange bag containing the guns before being arrested and had no idea where the guns were located in the car. He also testified that he had no knowledge of the ski masks that law enforcement found in the car.

At the close of trial, the jury found Hernandez guilty of felon in possession and of felony firearm. The trial court sentenced Hernandez to 5 years on the felony firearm conviction and 11 months to 7.5 years on the felon in possession conviction. On March 7, 2024, Hernandez filed a motion for directed verdict of acquittal/for new trial under MCR 6.419(C) and MCR 6.431(A) and (D). The trial court heard arguments on the motion on May 15, 2024 and adjourned the hearing until the Supreme Court decision in *United States v Rahimi*, 602 US 680; 144 S Ct 1889; 219 L Ed 2d 351 (2024). Supplemental briefs were filed after that decision and in a written opinion, the trial court denied Hernandez's motion. This appeal followed.

## II. ANALYSIS

### A. HERNANDEZ'S RIGHT TO BEAR ARMS

Hernandez argues that both on its face and as applied to him, MCL 750.224f violates his right to bear arms for self-defense as guaranteed by the Second Amendment of the United States Constitution and by Article One, Section Six of the Michigan Constitution. We disagree.

### 1. ISSUE PRESERVATION AND STANDARD OF REVIEW

At trial, Hernandez never argued that his constitutional right to bear arms was violated. However, following trial, Hernandez filed a postjudgment motion for directed verdict of acquittal/for new trial under MCR 6.419(C) and MCR 6.431(A) and (D). In general, an issue is preserved for appeal if it was raised in or decided by the trial court. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). However, "[t]his Court . . . has the power to consider an issue when necessary, even if unpreserved or not properly presented." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020), citing *Mack v Detroit*, 467 Mich 186, 207; 649 NW2d 47 (2002).

While Hernandez raised this issue in his postjudgment motion for directed verdict of acquittal/for new trial, it was not raised during trial. In *People v Carines*, 460 Mich 750, 761-762; 597 NW2d 130 (1999), this Court recognized that "[t]rial is 'by far the best time to address a defendant's constitutional and nonconstitutional rights.' " (citations omitted). This issue is therefore unpreserved.

This Court reviews "unpreserved constitutional issues for plain error affecting the defendant's substantial rights." *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). This requires the defendant to show that the plain error affected the outcome of the proceedings. *Carines*, 460 Mich at 764. Reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id*.

### 2. HERNANDEZ FAILS TO ESTABLISH ANY INFRINGEMENT OF HIS RIGHT TO BEAR ARMS UNDER THE MICHIGAN AND UNITED STATES CONSTITUTIONS

#### a. MCL 750.224f DOES NOT VIOLATE THE RIGHT TO BEAR ARMS UNDER THE MICHIGAN CONSTITUTION

The Michigan Constitution provides: "Every person has a right to keep and bear arms for the defense of himself and the state." Const 1963, art 1, § 6. Under MCL 750.224f, a person convicted of a felony "shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm" until the expiration of a specified time period and the satisfaction of specified conditions. MCL 750.224f(1)-(2). This Court has already ruled on whether MCL 750.224f violates the Michigan Constitution in *People v Swint*, 225 Mich App 353, 363; 572 NW2d 666 (1997), where we held, "the constitutional right to bear arms contained in Const 1963, art 1 § 6, does not guarantee defendant the right to possess a firearm after defendant is convicted of a

felony." This Court further explained, "MCL 750.224f; MSA 28.421(6) has effectively achieved the legitimate legislative purpose of keeping guns out of the hands of those most likely to use them against the public." *Swint*, 225 Mich App at 374. See also *People v Green*, 228 Mich App 684, 692; 580 NW2d 444 (1998); *People v Parker*, 230 Mich App 677, 687; 584 NW2d 753 (1998). Hernandez fails to distinguish his claim from this binding precedent and conceded as much during oral argument in this Court.

### b. MCL 750.224f DOES NOT VIOLATE THE RIGHT TO BEAR ARMS UNDER THE UNITED STATES CONSTITUTION

Not only does Hernandez's claim under the Michigan Constitution fail, so too does his claim under the United States Constitution. The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." US Const, Am II. "[T]he Second Amendment, like the First and Fourth Amendments, codified a pre-existing right," neither "granted by the Constitution" nor "dependent upon that instrument for its existences." *District of Columbia v Heller*, 554 US 570, 592, 635; 128 S Ct 2783; 171 L Ed 2d 637 (2008) (quotations omitted). The right to bear arms is thus "enshrined with the scope [it was] understood to have when the people adopted [it]." *Id*. at 634-635. The Second Amendment is made fully applicable to the states through the Fourteenth Amendment. *McDonald v Chicago*, 561 US 742, 750; 130 S Ct 3020; 177 L Ed 2d 894 (2010). The United States Supreme Court has held that the Second Amendment protects the right to possess and carry weapons for the purpose of self-defense. *Heller*, 554 US at 629-630. Hernandez argues that Michigan's felon in possession statute, MCL 750.224f, violates those convicted of felonies' Second Amendment right to possess firearms to defend themselves from imminent violence. However, that right is not without limits. *Heller*, 554 US at 595, 626.

In *Heller*, 554 US at 573, the Supreme Court considered whether a District of Columbia prohibition on the possession of usable handguns in the home violated the Second Amendment. In concluding that it did, the Supreme Court held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense. *Id*. at 592. The Supreme Court emphasized, however, that the right secured by the Second Amendment is not unlimited. *Id*. at 595, 626. It also highlighted that the Second Amendment protects "the right of law-abiding, responsible citizens" to use arms in defense of their home. *Heller*, 554 US at 635. Two years after *Heller*, the Supreme Court held in *McDonald*, 561 US at 750, that the Second Amendment right is fully applicable to the States. This holding reaffirmed the Supreme Court's statement in *Heller* that the Second Amendment does not prohibit prohibitions on persons convicted of felonies from possessing firearms. *McDonald*, 561 US at 786.

Then, in 2022, the Supreme Court decided another landmark Second Amendment case in *NY State Rifle & Pistol Ass'n v Bruen*, 597 US 1, 18-27, 31-32, 70; 142 S Ct 2111; 213 L Ed 2d 387 (2022). The issue there was the constitutionality of a licensing scheme, not a penal statute. *Id*. at 11. In *Bruen*, the Supreme Court reaffirmed *Heller*'s "text-and-history" standard for resolving Second Amendment challenges. *Bruen*, 597 US at 39. The Court made several other statements indicating that *Heller* remained good law, stating that it was "[f]ollowing the course charted by *Heller*," *Bruen*, 597 US at 27, that its holding was "consistent with *Heller* and *McDonald*," *Bruen*, 597 US at 10, and that its holding was "[i]n keeping with *Heller*," *Bruen*, 597 US at 17. *Bruen* also reiterated *Heller*'s statement that the Second Amendment " 'surely elevates

above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Bruen*, 597 US at 26, quoting *Heller*, 554 US at 635. Importantly, *Bruen* reaffirmed that the right to bear arms is "subject to certain reasonable well-defined restrictions." *Bruen*, 597 US at 70.[2]

Most recently, in *Rahimi*, the Supreme Court again iterated, "[b]ut *Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " *Rahimi*, 602 US at 699 (citations omitted). Hernandez has failed to overcome this presumption.

### c. HERNANDEZ'S AS-APPLIED CHALLENGE TO MCL 750.224f

Hernandez has also not shown that the trial court committed plain error by denying his as-applied challenge when his prior felony conviction involved violence and guns. Hernandez's previous conviction was for possessing a firearm during the course of a felony, assault with intent to murder. An as-applied challenge on this constitutional claim for an individual who previously possessed a firearm during the course of an assaultive incident without legal authority or factual development is not a compelling as-applied challenge.

Binding precedent indicates that Hernandez cannot prevail concerning his claim under the Michigan Constitution and he has not demonstrated that the decisions in *Bruen* and *Rahimi* abrogated the conclusions in *Heller* and *McDonald*, that the right to carry a firearm applies to law-abiding citizens which the State can reasonably determine does not include individuals previously convicted of felonies. Hernandez has not established plain error.

## B. HERNANDEZ'S SUFFICIENCY OF THE EVIDENCE AND GREAT WEIGHT OF THE EVIDENCE CLAIMS

Hernandez argues that the prosecutor failed to present sufficient evidence to establish that he possessed the Beretta on the date of his arrest, and that this Court should vacate his convictions. In the alternative, Hernandez argues he is entitled to a new trial, as the verdict went against the great weight of the evidence. We disagree.

### 1. ISSUE PRESERVATION AND STANDARD OF REVIEW

There is no requirement that the issue of a lack of sufficient evidence to sustain the conviction be preserved. *People v Patterson*, 428 Mich 502, 514; 410 NW2d 733 (1987). This Court reviews whether a conviction lacks sufficient evidence de novo. *People v Osby*, 291 Mich App 412, 415; 804 NW2d 903 (2011). This Court must view the evidence in the light most favorable to the prosecution to "determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Alter*, 255 Mich

---

[2] There is no dispute that the felon in possession statute is consistent with a long-standing tradition of firearm regulation history in this state and nation. The prosecution's brief on appeal outlines the historical analogue in this context, which Hernandez entirely fails to rebut.

App 194, 201-202; 659 NW2d 667 (2003). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

For this Court to review a claim that a jury verdict was against the great weight of the evidence, a defendant must have raised the issue in a motion for a new trial before the trial court. *People v Winters*, 225 Mich App 718, 729; 571 NW2d 764 (1997). Hernandez preserved this issue by raising this issue in his motion for directed verdict of acquittal/for new trial under MCR 6.419(C) and MCR 6.431(A) and (D). This Court reviews a preserved challenge to the great weight of the evidence for an abuse of discretion. *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

### 2. HERNANDEZ FAILS TO SHOW THAT THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT OR THAT THE VERDICT WENT AGAINST THE GREAT WEIGHT OF THE EVIDENCE

A conviction lacking sufficient evidence violates a defendant's right to due process under the Fourteenth Amendment of the United States Constitution. *Jackson v Virginia*, 443 US 307, 316; 99 S Ct 2781; 61 L Ed 2d 560 (1979) (explaining that an "essential" guarantee of due process is the protection against conviction except where there is "evidence . . . to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense"). Unless "sufficient evidence" against a defendant has been introduced, a "judgment of acquittal should be entered." *People v Hampton*, 407 Mich 354, 368; 85 NW2d 284 (1979). A conviction lacks sufficient evidence if, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could not find that "the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). The mere fact that there is "some evidence" against a defendant, however, does not necessarily imply that there is also proof beyond a reasonable doubt. *Hampton*, 407 Mich at 368 (holding that a court may grant a directed verdict of acquittal even where "some evidence" has been admitted).

"[A] new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). To determine whether the verdict is against the great weight of the evidence, a court reviews the entire body of proofs. *Id*. at 639. When the evidence conflicts, the court should leave the resolution of credibility issues to the jury, even if the testimony is impeached to a certain extent, "unless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it' . . . or [the testimony] contradicted indisputable physical facts or defied physical realities." *Id*. at 645-646.

The elements of felon in possession of a firearm include a previous felony conviction and possession of a firearm. *People v Perkins*, 473 Mich 626; 703 NW2d 448 (2005). Whether a defendant possessed a firearm is a question of fact. *People v Hill*, 433 Mich 464, 469; 446 NW2d 140 (1989). To establish that a defendant possessed a firearm, the prosecution must establish either actual or constructive possession of the firearm. *Id*. at 470. Possession may be sole or joint. *Id*. "A person has constructive possession if there is proximity to the article together with indicia of control." *Id*. Constructive possession of a firearm is established "if the location of the weapon is

known and it is reasonably accessible to the defendant." Physical possession of the firearm is not necessary as long as the defendant has constructive possession. *Id*. at 471. Mere presence near a weapon is not enough to sustain a conviction for possession of that weapon. *Wolfe*, 440 Mich at 515.

Here, there was sufficient evidence to support the jury's verdict and the trial court did not abuse its discretion in denying Hernandez's motion for new trial based on the claim that the evidence was against the great weight of the evidence. The trial court found that there was more than sufficient evidence to support the jury's conclusion that Hernandez possessed the Beretta found in the orange bag in the car by establishing that "[t]he guns at issue were located in a car in which he was traveling, the guns were contained in an orange bag within his reach, he handled a Beretta that was found in the bag, and his DNA was on the Beretta." The elements of felon in possession of a firearm in this case were established: possession of a firearm by a person who was previously convicted of a specified felony, less than five years had passed since all fines were paid, imprisonment served, or all terms of probation completed, and his right to possess a firearm had not been restored. MCL 750.224f; *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016). The elements of felony firearm are possession of a firearm during the commission or attempted commission of a felony. MCL 750.227b; *People v Avant*, 235 Mich App 505; 597 NW2d 864 (1999).

The orange bag of guns was recovered within reach of Hernandez. Hernandez's DNA was on the Beretta and the evidence lent itself to the prosecutor's theory that all four passengers in the car each had his own gun. Essentially, Hernandez's great weight claim rests entirely on his own testimony. This Court will not disturb a verdict because of a disagreement with a credibility determination by the jury. See *Lemmon*, 456 Mich at 636 (a judge may not repudiate a jury verdict on the ground that "he disbelieves the testimony of the witnesses for the prevailing party."). Viewed in a light most favorable to the prosecution, the evidence presented at trial indicated that Hernandez possessed the firearm at issue, despite having a prior felony conviction. Hernandez failed to show that the trial court abused its discretion when it denied his motion for new trial, asserting that the verdict was against the great weight of the evidence or that there was insufficient evidence to support his convictions.

### C. HERNANDEZ'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Hernandez argues he is entitled to a new trial due to the ineffective assistance of his trial counsel in failing to object to the recovered ski masks and the Facebook Live video from being introduced into evidence. We disagree.

### 1. STANDARD OF REVIEW

A claim of ineffective assistance of counsel "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. *Id*. The trial court's findings are clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

2. **HERNANDEZ FAILS TO DEMONSTRATE THAT A DIFFERENT RESULT AT TRIAL WOULD HAVE BEEN REASONABLY PROBABLE BUT FOR TRIAL COUNSEL'S DEFICIENT PERFORMANCE**

Defendants have a constitutional right to the assistance of counsel for their defense in all criminal prosecutions. See US Const, Am VI; Const 1963, art 1, § 20. "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. For that reason, the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland v Washington*, 466 US 668, 685-686; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (citations omitted). To establish that defense counsel was ineffective, defendant must demonstrate that "(1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id.* Because both prongs must be satisfied to establish ineffective assistance of counsel, if a defendant cannot satisfy one prong, the other need not be considered. *Id.* at 697. "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

Hernandez alleges deficient performance by trial counsel on the basis of counsel's failure to object to the admission of the ski masks and the Facebook live video. The failure of defense counsel to move for suppression of inadmissible evidence may amount to ineffective assistance of counsel, where defense counsel's failure affected the outcome of the trial. See *People v Ullah*, 216 Mich App 669, 684-686; 550 NW2d 568 (1996) (failure to move for suppression of inadmissible similar acts evidence).

MRE 401 defines relevancy as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the actions more probable or less probable than it would be without the evidence." *People v Mills*, 450 Mich 61, 66; 537 NW2d 909 (1995). Once the prosecution demonstrates that evidence is relevant, it is the defendant's burden to show that relevant evidence should be excluded. MRE 403; *Tibitoski v Macomb Disposal*, 136 Mich App 259, 263; 356 NW2d 15 (1984). The probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. *People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993). The major function of MRE 403 is to exclude matters of "scant or cumulative force, dragged in by the heels for the sake of its prejudicial effect . . . it is not designed to permit the court to 'even out' the weight of evidence, to mitigate a crime, or to make a contest where there is little or none." *Mills*, 450 Mich at 75 (citations omitted).

In the present case, the prosecution admitted without any objection from Hernandez's trial counsel two ski masks recovered during a search of the vehicle and the Facebook live video. As admitted by Rogers, Hernandez was not in any of the Facebook live videos. On appeal, Hernandez claims the failure to object to the evidence of the ski masks and the Facebook live video constitutes ineffective assistance of counsel, as the ski masks and the Facebook live video were not relevant, and unfairly prejudicial. Thus, Hernandez claims he is entitled to a new trial.

Hernandez has failed to show that counsel would have been successful in excluding the Facebook live video. The reason officers pulled over the Pacifica was based on their viewing of

Myles possessing a gun on the Facebook live video and then seeing him enter the vehicle. Thus, admission of the video supports the legality of the initial stop. The video was relevant and admitted for a proper purpose and any objection would have been futile. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). The ski masks present a trickier question. It is difficult to parse what, if any, relevance the ski masks had in a trial for weapon possession charges. The prosecution argues that admission of the ski masks bore relevance, as they circumstantially showed that each defendant possessed certain items in the car, which in turn supported the conclusion that each defendant also possessed his own weapon. But it was never shown who possessed the ski masks. In fact, the ski masks were never swabbed and analyzed for DNA. They also were not featured in the Facebook live video. It seems then, that an objection under MRE 401 or MRE 403 would have led to their exclusion, and based on this record, we find no reasonable strategic reason for failing to object to the ski masks as evidence.

Nevertheless, even if Hernandez showed deficient performance based on this failure to object, his ineffective assistance claim fails because he has not demonstrated that "but for counsel's deficient performance, a different result would have been reasonably probable," *Trakhtenberg*, 493 Mich at 55-56 (citations omitted), a requirement to establish a claim of ineffective assistance of counsel. Hernandez cannot meet the second prong of the test, as he fails to demonstrate a reasonable likelihood of a different outcome from any alleged deficient performance. As already established, even without the admission of both the Facebook live video and ski masks, the prosecution has presented sufficient evidence, including strong DNA evidence, connecting an illegal firearm to Hernandez. Thus, Hernandez failed to show probability of a different result. As Hernandez fails to meet both prongs of the *Strickland* test, he fails to establish that he received ineffective assistance of counsel at trial, and is not entitled to relief on this issue.

## III. CONCLUSION

Hernandez failed to establish plain error affecting his substantial rights occurred in either his facial or as-applied challenges to MCL 750.224f under the United States and Michigan Constitutions. Hernandez too failed to establish that there was insufficient evidence to support the jury's verdict or that the trial court abused its discretion in denying his motion for new trial based on the claim that the verdict was against the great weight of the evidence. Further, Hernandez failed to establish ineffective assistance of counsel, as he did not demonstrate that but for trial counsel's deficient performance, a different result at trial would have been reasonably probable.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Thomas C. Cameron
/s/ Adrienne N. Young